SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

---------------------------------------------------------X
                                    :

NEW YORK DIALYSIS SERVICES, INC.,    :    Index No.

            Petitioner,    :    **VERIFIED PETITION TO STAY**

    -against-    :    **ARBITRATION**

                             :

NEW YORK STATE NURSES    :
ASSOCIATION,    :

            Respondent.    :
---------------------------------------------------------X

Petitioner New York Dialysis Services, Inc. ("NYDS"), by and through its attorneys,

Duane Morris LLP, as and for its Petition, pursuant to CPLR §7503, respectfully alleges as

follows:

    1.      Petitioner NYDS is a corporation organized and existing under the laws of New

York, with its principal place of business at 1225 Franklin Avenue, Suite 510, Garden City, NY

11530.

    2.      Respondent New York State Nurses Association ("NYSNA") is a labor

organization, with its principal place of business at 131 West 33rd Street, 4th Floor, New York,

NY 10001.

    3.      NYDS is a company with extensive experience operating dialysis clinics

throughout New York State and is owned by Fresenius Medical Care Holdings, Inc.

("Fresenius"), a world leader in both the manufacture and distribution of dialysis equipment,

medication and supplies and in the provision of clinical dialysis services.

4.      NYDS operates 41 dialysis facilities across New York State, including 19 in the downstate New York area.

5.      NYSNA represents registered nurses ("RNs") who work for NYDS in five bargaining units, including the "ABC" unit, which consists of the Atlantic Peritoneal Dialysis and Home Training Center ("APD"), a home dialysis training center with two training chairs employing only one RN, and Atlantic Hemodialysis at Cobble Hill ("CH"), a five-chair dialysis unit located within a nursing home employing five RNs, both located in Brooklyn.

6.      The ABC unit previously included two facilities which have closed, Atlantic Hemodialysis Center ("AHC") which closed in or about May 2014 and Brooklyn Kidney Center ("BKC") which closed in or about August 2015.

7.      NYDS and NYSNA were parties to a collective bargaining agreement, which covered the ABC unit ("ABC CBA"). The ABC CBA expired on June 30, 2014 and the parties have not entered into a new agreement. The parties have been in collective negotiations regarding a new agreement since May 2014 to the present.

8.      Section 13.05 of the ABC CBA contained an arbitration provision that allowed either party to submit an unresolved grievance to arbitration. This arbitration provision expired upon the ABC CBA's expiration (i.e., June 30, 2014). *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200 (1991) ("an arbitration clause does not, by operation of the NLRA…continue in effect after expiration of a collective-bargaining agreement"); *Lincoln Lutheran of Racine*, 362 NLRB No. 188 (2015).

9.      NYDS has not participated in an arbitration of any grievance since the ABC CBA's expiration.

10.     This dispute involves a new dialysis facility opened by NYDS located at 595 DeGraw Street in Brooklyn, New York ("DeGraw").

11.     NYDS commenced the design and construction of DeGraw with the intention that it would replace AHC, BKC and APD. On August 7, 2013, NYDS filed a Limited Review Application for a Certificate of Need ("CON") with the New York State Department of Health ("DOH") seeking its approval for NYDS to construct and operate a 50-chair dialysis facility (four sections of 12 chairs and two isolation stations), in lieu of the 50 chairs then operational at AHC and BKC.

12.     NYDS had communicated to NYSNA since the commencement of the parties' 2014 negotiations that the plan was for DeGraw to replace AHC and BKC and then to move the APD training function to the DeGraw location. During the course of discussions, NYDS also discussed with NYSNA moving the CH operation to DeGraw as well but this ultimately did not come to fruition.

13.     NYDS had initially planned for DeGraw to open in or about December of 2013. However, ultimately, the opening was delayed by almost three years because NYDS was unable to obtain the necessary construction approvals from the New York City Department of Buildings ("NYCDOB") and DeGraw was plagued with other construction issues.

14.     During the period when the opening of DeGraw was delayed, both AHC and BKC closed. AHC closed on or about May 22, 2014, as a result of the closing of Long Island College Hospital where AHC was located. BKC closed in or about August 2015 because its landlord, SUNY, would not renew the lease and then abruptly terminated the month-to-month lease relationship upon the sale of the property.

15.     With the closure of AHC and BKC, NYDS lost many of the patients it had originally expected would elect to transfer to DeGraw, as well as the RNs (along with other staff) it originally expected to transfer to DeGraw to service the AHC and BKC patients.

16.     CH was not included in the original CON application because the nursing home had objected to sending its patients out of the facility for treatment.  While NYDS contemplated moving the CH operation into DeGraw, ultimately the nursing home maintained its objection to having its residents dialyzed outside of the nursing home.  NYDS determined it did not want to risk losing that work to a competitor so NYDS never sought DOH approval to close CH and NYDS continues to operate CH.

17.     While DeGraw's opening was delayed, APD also suffered a significant drop in patient census, which prompted layoff negotiations with NYSNA and ultimately resulted in the elimination of one of the two RN positions in December 2015.  NYDS decided to leave this home dialysis program at its present location amid concern that it would further lose patients if it sought to relocate the training center to DeGraw, which is about a 25 minute bus or train ride from DeGraw.

18.     While NYDS and NYSNA bargained over a new agreement, DeGraw's opening was continually delayed from the summer of 2014, to November 2014, to April 2015, to the summer of 2015 and thereafter.  As the months followed, NYDS indicated that it really could not say with any certainty when or even if DeGraw would open, given the series of unexpected circumstances that kept the facility from opening.  However, as of the spring 2016, it appeared the earliest DeGraw could open, if it did, would be in the fall of 2016.

19.     Because of the unexpected delays, NYDS determined that DeGraw would be opening as a new facility, given the passage of time, loss of AHC and BKC staff and presumably

- 4 -

most of their patients (who had long been treated at other facilities and by competitors following

the AHC and BKC closures) and its decisions not to close CH and APD.

20.     At the April 25, 2016 bargaining session, NYDS informed NYSNA that the terms

of the ABC CBA would not apply to DeGraw because DeGraw would be opened as a new

facility and would not involve a move or relocation of either the closed AHC or BKC facilities,

nor a transfer of the APD or CH facilities.

21.     On May 26, 2016, NYDS, through its healthcare regulatory counsel, contacted the

DOH to provide notification that DeGraw could not be opened in time so that patients could be

relocated such that it was no longer a relocation of facilities as originally represented to the

DOH.  NYDS sought guidance from the DOH as to whether a new CON application needed to

be presented to the DOH due to the changed circumstances.

22.     The DOH responded that NYDS would have to submit a new Administrative

Review CON to request approval to open the DeGraw facility as a new clinic rather than a

relocation.  NYDS submitted the new Administrative Review CON to the DOH on August 9,

2016.  Unlike the Limited Review CON, where the plan was for DeGraw to replace existing

facilities, the Administrative Review CON detailed that DeGraw would create 49 chairs as a new

facility.[1]  The new CON application was contingently approved by the DOH on or about

September 29, 2016.  Notably, the operating certificate number under which the original CON

application and the new CON application were filed for the DeGraw facility is not the same as

any other NYSNA represented clinic.

23.     On October 31, 2016, NYDS opened DeGraw, under the name "Fresenius Kidney

Care – DeGraw Street", as a new dialysis facility.

---

[1] One isolation station was ultimately eliminated due to lack of sufficient space.

24.      On October 25, 2016, NYSNA filed an unfair labor practice charge against NYDS with the National Labor Relations Board ("NLRB") alleging NYDS violated the National Labor Relations Act ("NLRA") by refusing to recognize it as the collective bargaining representative for the RNs employed at DeGraw, by refusing to apply the expired ABC CBA to the RNs at DeGraw and engaging in regressive bargaining due to NYDS' refusal to recognize NYSNA at DeGraw despite its prior intention to do so.  NYSNA amended its charge on November 18, 2016.

25.      On November 11, 2016, NYDS filed an unfair labor practice charge against NYSNA with the NLRB alleging NYSNA violated the NLRA by unlawfully demanding NYDS recognize it as the collective bargaining representative for newly hired or to be hired RNs at DeGraw and unlawfully insisting that the expired ABC CBA be applied to the RNs at DeGraw. NYDS amended its charge on November 22, 2016 contending that NYSNA's latest attempt, through use of the grievance and arbitration procedures under the expired ABC CBA, to force a collective bargaining representative on DeGraw RNs, with no showing by NYSNA of majority support from the RNs, was also unlawful under the NLRA.

26.      Despite already filing an unfair labor practice charge, on November 16, 2016 NYSNA filed a Step II grievance alleging NYDS violated Section 1 (the relocation and Kroger[2] clauses) and Section 2 (the recognition clause) of the ABC CBA "by failing on an ongoing basis to apply the terms of the CBA to registered professional nurses working for the Employer at the recently opened facility at 595 DeGraw Street in Brooklyn, NY...".

---

[2] The term "Kroger" clause in a collective bargaining agreement typically refers to a provision indicating that an employer will voluntarily recognize a union and apply a contract in effect at an existing location to an employer's new location if the union demonstrates majority support among the employees at the new location or, alternatively, attempts to accrete employees at a new location to an existing location. *Houston Division of the Kroger Co.,* 219 NLRB 388, 389 (1975).

- 6 -

27.     On November 28, 2016, NYDS denied NYSNA's grievance because, among other reasons, the Kroger clause in the ABC CBA expired upon contract expiration, the opening of DeGraw was not a relocation of other NYDS facilities at which NYSNA represents RNs, the recognition clause provided no basis to apply the expired ABC CBA to DeGraw employees, the subject of the grievance is solely a matter for the NLRB, and NYSNA does not have majority support at DeGraw as required under the NLRA.  NYDS also indicated that the grievance was not arbitrable for some of the same reasons noted above, as well as because the ABC CBA expired, the subject of the grievance is outside the scope of the arbitrator's authority, and the grievance was untimely.

28.     On December 21, 2016, NYSNA filed a Demand for Arbitration against NYDS with the American Arbitration Association ("AAA") regarding its grievance.

29.     On January 3, 2017, the AAA acknowledged it is processing NYSNA's demand for arbitration, provided a list of names selected from its panel of labor arbitrators and requested the parties return the list for selection of an arbitrator by January 13, 2017.

30.     On January 9, 2017, the AAA stated it would not hold the arbitration proceedings in abeyance unless a request was made on consent of both parties.

31.     NYSNA cannot arbitrate its grievance as a matter of law because the arbitration provision in the ABC CBA expired upon contract expiration.

32.     NYSNA cannot attempt to arbitrate its grievance on a theory that the grievance arose under the ABC CBA prior to its expiration.  The decision to open DeGraw as a new facility was not made until 22 months after the ABC CBA expired and that decision was not actually implemented until 28 months after the ABC CBA expired when DeGraw finally opened.  The

- 7 -

events that led NYDS to open DeGraw as a new facility rather than the relocation of existing facilities occurred after the ABC CBA expired.

33.     Additionally, arbitration should be stayed because NYSNA initiated NLRB proceedings on the same issue prior to filing its grievance and demanding arbitration.  The subject matter of the arbitration is a matter that implicates the policies under the NLRA and the NLRB's jurisdiction over these NLRA issues is superior to any jurisdiction of an arbitrator. Moreover, if arbitration is not stayed, there is the very real risk that any arbitration decision will be inconsistent with federal labor law and conflict with a NLRB determination on the same issue.

34.     Twenty days have not elapsed since the date of service by mail of the Demand for Arbitration.

**WHEREFORE**, Petitioner New York Dialysis Services, Inc. respectfully requests the entry of an Order permanently staying all proceedings under the Demand for Arbitration pursuant to CPLR §7503(b).


Dated: January 9, 2017
       New York, NY


                                        **DUANE MORRIS LLP**


                              By:     */s/ Eve I. Klein*_____
                                        Eve I. Klein, Esq.
                                        Eric W. Ruden, Esq.
                                        1540 Broadway
                                        New York, NY 10036
                                        Tel. (212) 692 1000
                                        Attorneys for Petitioner

- 8 -

## VERIFICATION

STATE OF NEW YORK     )
                         ) ss

COUNTY OF NEW YORK   )

       COURTNEY GORDON, being duly sworn, deposes and says:

       I am the Director of Operations for the dialysis clinics located in the Metro New York

region for New York Dialysis Services, Inc.  I have read the foregoing Verified Petition, and

know the contents thereof, and verify that the same is true to my knowledge, except as to those

matters therein stated to be alleged upon information and belief, and as to those matters, I believe

them to be true.

                                    COURTNEY GORDON

Sworn to before me this
_____ day of January, 2017.

_____
Notary Public

EVE I. KLEIN
Notary Public - State of New York
NO. 02KL4920912
Qualified in New York County
My Commission Expires Jan. 25, 2018